IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JAMES C. PAYNE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| | ) |
| DEPARTMENT OF CORRECTIONS OF | ) |
| THE STATE OF OKLAHOMA; BOARD OF | ) |
| COUNTY COMMISSIONERS OF | ) |
| PITTSBURG COUNTY | ) Case No. 12-CV-0407-JHP |
| PITTSBURG COUNTY SHERIFF'S | ) |
| DEPARTMENT; PITTSBURG COUNTY | ) |
| JAIL; JOEL KERNS, *Sheriff of Pittsburg* | ) |
| *County in his Official and Individual Capacity*; | ) |
| MISSY ELDRIDGE, *in her Individual* | ) |
| *Capacity as Pittsburg County Jail Administrator*; | ) |
| JOHN DOES 1-30, *employees of the Pittsburg* | ) |
| *County Sheriff's Office*; and JOHN DOES | ) |
| 31-60, Employees of the Pittsburg County Jail | ) |
| | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

Before the Court are Defendant Department of Corrections of State of Oklahoma's ("DOC") Motion to Dismiss [Doc. No. 44]; Defendants Pittsburg County Jail ("PCJ") and Pittsburg County Sheriff's Department's ("PCSD") Motion to Dismiss [Doc. No. 45]; and Defendant Board of County Commissioners of Pittsburg County's (the "Board) Motion to Dismiss [Doc. No. 46]. After review of the briefs and for the reasons stated below, DOC's Motion to Dismiss is **GRANTED**; PCJ and PCSD's Motion to Dismiss is **GRANTED**; and the Board's Motion to Dismiss is **DENIED**.

**BACKGROUND**

In 2010, Plaintiff James C. Payne was convicted of a felony stalking count and sentenced to five years of incarceration, with all but the first year suspended. As a result of the suspended sentenced imposed by the state district court, Plaintiff was to serve one year of jail time with four years suspended. Plaintiff asserts that he was to complete service of his one-year sentence and be released from custody on June 11, 2011. In early-May 2011, the Plaintiff contacted Missy Eldridge ("Eldridge"), the Pittsburg County Jail Administrator, regarding his anticipated release on June 11, 2011, specifically inquiring about the possibility of early release. After Plaintiff's release date passed, Plaintiff spoke with Eldridge about his release from incarceration Eldridge advised him that this decision was left to DOC. In addition, the Plaintiff began regularly complaining to Pittsburg County Jailers, including, Lieutenant Nick Adams ("Adams"), Jailer John O'Dell ("O'Dell"), and another guard, which Plaintiff identified as simply Josiah. On one occasion, Adams stated the county received additional compensation by keeping Plaintiff incarcerated. In early August 2011, the Plaintiff complained to O'Dell about his prolonged incarceration, who in turn informed Eldridge of the Plaintiff's complaint. Eldridge confirmed to O'Dell that Plaintiff was to have been released in June 2011. O'Dell then informed Plaintiff that he would personally discuss Plaintiff's prolonged incarceration with Sheriff Kern; however, O'Dell never discussed the subject with Plaintiff again. Plaintiff was ultimately not released from incarceration until September 6, 2011.

In his Complaint, Plaintiff asserts the following claims: (1) Violation of 42 U.S.C. § 1983 as to the Board, PCJ, and PCSD; (2) Violation of 42 U.S.C. § 1983 as to Defendants Sheriff Kerns, Eldridge, John Does 1-30, and John Does 31-60; (3) Negligence and Negligence

Per Se as to the Board, PCSD, PCJ, and DOC; (4) Intentional Infliction of Emotional Distress as to Defendant Sheriff Kerns, Eldridge, John Does 1-30, and John Does 31-60. [Doc. No. 11].[1]

## DISCUSSION

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)); *see Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. Determining whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *See id.* at 679. The question to be decided is "whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Lane v. Simon,* 495 F.3d 1182, 1186 (10th Cir. 2007) (internal quotation omitted).

### A. Plaintiff's Claims Against DOC

DOC contends Plaintiff's state law tort claims must be dismissed pursuant to the Oklahoma Governmental Tort Claims Act ("OGTCA"), Okla. Stat. tit. 51, § 151, *et seq.* Section 155(24) of the OGTCA provides:

> The state or a political subdivision shall not be held liable if a loss or claim results from:
>
> > 24. Provision, equipping, operation or maintenance of any prison, jail or correctional facility, or injuries resulting from the parole or escape of a prisoner or injuries by a prisoner to any other prisoner; provided, however,

---

[1] In the alternative, Plaintiff also asserts that Defendants Sheriff Kerns, Eldridge, John Does 1-30, and John Does 31-60's conduct with regard to the state law torts allegedly was outside the scope of their employment as set out by the Oklahoma Governmental Tort Claims Act, Okla. Stat. tit. 51, § 151 et. seq. [Doc. No. 11, 12]. However, this claim is not relevant to motions before the Court.

> this provision shall not apply to claims from individuals not in the custody of the Department of Corrections based on accidents involving motor vehicles owned or operated by the Department of Corrections.

In *Medina v. State*, the Oklahoma Supreme Court answered a certified question of law posed to it by the United States District Court for the Western District of Oklahoma, explaining:

> Reading the three clauses of § 155(23) together reveals an intent to withhold the waiver of sovereign immunity for any loss or injury, whether to an inmate or other person, resulting from the operational level acts required to furnish the services of a penal institution, including the construction and repair of the facility; the security of the facility; the employment of personnel; the utilities and furnishings of the facility; the food, clothing, items for hygiene and other basic personal items needed by inmates or other persons; the educational, rehabilitative, communicational, recreational and medical and health services or any other service provided for inmates or other persons; the assignment of an inmate to a facility or a cell; and the release of an inmate; with the single exception of loss to persons not in custody caused by an accident involving a motor vehicle operated by the Department of Corrections.

1993 OK 121, 871 P.2d 1379, 1384. The Court finds the failure to release an inmate is a function subsumed in the operation of a jail or correctional facility, and, therefore, DOC is immune from liability for claims brought pursuant to the OGTCA. Accordingly, DOC's Motion to dismiss is granted.

**B. Plaintiff's Claims Against PCJ and PCSD**

The capacity of an entity to be sued is determined by the law of the state in which the federal district court is located. Fed.R.Civ.P. 17(b). In Oklahoma, each organized county can sue and be sued. Okla. Stat. tit. 19, § 1. The authority of each Oklahoma county is exercised by its board of county commissioners, Okla. Stat. tit. 19, § 3, and a lawsuit brought against a county must be filed against the board of county commissioners of the relevant county. Okla. Stat. tit. 19, § 4. A county jail in Oklahoma, as a subdivision of the county in which it is located, has no separate legal identity under Oklahoma law, and therefore PCJ and PCSD cannot be sued in this Court. *See Lindsey v. Thomson,* No. 06-7114, 2007 WL 2693970 at *3 (10th Cir. Sept. 10, 2007)

(unpublished op.) (affirming dismissal of § 1983 claims against police departments and county sheriff's department, entities with no apparent legal existence); *White v. Utah,* No. 00-4109, 2001 WL 201980 at *1 (10th Cir. March 1, 2001) (unpublished op.) (affirming dismissal of county jail; although applicable state law provided that county may sue or be sued, no state law supported directing a cause of action directly against a county's subdivisions, including its jails); *Aston v. Cunningham,* No. 99-4156, 2000 WL 796086 at *4 n. 3 (10th Cir. June 21, 2000) (unpublished op.) (affirming dismissal of county jail as defendant in prisoner's § 1983 action on basis that "a detention facility is not a person or legally created entity capable of being sued"); *Reid v. Hamby,* No. 95-7142, 1997 WL 537909 at * 6 (10th Cir. Sept. 2, 1997) (unpublished op.) (holding that "an Oklahoma 'sheriff's department' is not a proper entity for purposes of a § 1983 suit"). Because PCJ and PCSD are not suable entities under Oklahoma law, this Court finds both parties should be dismissed from this action. Accordingly, Defendants PCJ and PCSD's Motion to Dismiss is granted.

**C. Plaintiff's Claims Against the Board**

**1. State Law Tort Claims**

As discussed above, section 155(24) of the OGTCA provides immunity to state or a political subdivisions for state law tort claims arising from operation of a jail or correctional facility. For the same reasons Plaintiff's state law tort claims must be dismissed against DOC, the Court finds Plaintiff's state law tort claims against the Board must be dismissed.

**2. 42 U.S.C. § 1983 Claims**

42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities

5

> secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, in order to establish liability under § 1983, a plaintiff must prove that: (1) a person; (2) subjected or caused one to be subjected to the deprivation of a federal statutory or constitutional right; (3) by someone acting "under the color of law." 42 U.S.C. § 1983.

"[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Brammer-Hoelter v. Twin Peaks Charter Academy,* 602 F.3d 1175, 1188 (10th Cir. 2010) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483-84 (1986)). "[A municipality] cannot be held liable for the acts of its employees on a theory of *respondeat superior*." *Id.* at 1188. As a result, the Board cannot be made vicariously liable for acts of the individual officers under 42 U.S.C. § 1983. Rather a plaintiff must establish both (1) a policy or custom, and (2) a direct causal link between the policy or custom and the alleged injury. *Carney v. City & Cnty. of Denver*, 534 F.3d 1269, 1274 (10th Cir. 2008).

A policy or custom may take the form of (1) "a formal regulation or policy statement"; (2) an informal custom "amoun[ting] to 'a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law'"; (3) "the decisions of employees with final policymaking authority"; (4) "the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval"; or (5) the "failure to adequately train or supervise employees, so long as that failure results from 'deliberate indifference' to the injuries that may be caused." *Brammer-

*Hoelter*, 602 F.3d at 1189-90 (quoting *City of St. Louis v. Praprotnik,* 485 U.S. 112, 127 (1988) and *City of Canton v. Harris,* 489 U.S. 378, 388-91 (1989)) (internal quotation marks omitted).

The Court finds Plaintiff has plead facts sufficient to subject the Board to liability under 42 U.S.C. § 1983. Even if Sheriff Kern is the final policymaker with regard to policies and procedures at the Pittsburg County Jail, the Board is not automatically immune from § 1983 liability.[2] If Sheriff Kern, "acting in his official capacity as the County's delegated policymaker with respect to the operation of the [Pittsburg County Jail], established and implemented unconstitutional policies that caused Plaintiff's alleged constitutional injuries," then the Board may be liable for those injuries. *Woodson v. Oklahoma State Dep't of Health*, 2009 WL 1444525, *3 (W.D. Okla. May 20, 2009). Notwithstanding the Board's potential for liability based on Sheriff Kern's actions in his official capacity, the Court finds the allegations contained in Plaintiff's Complaint, when considered in the aggregate, sufficient to state a claim against the Board under 42 U.S.C. § 1983 for action attributable to the Board. Accordingly, the Board's Motion to Dismiss is denied as to the claims asserted against it pursuant to 42 U.S.C. § 1983.

## CONCLUSION

For the reasons detailed above, DOC's Motion to Dismiss is **GRANTED**; PCJ and PCSD's Motion to Dismiss is **GRANTED**; and the Board's Motion to Dismiss is **GRANTED in part and DENIED in part**.

---

[2] The Court declines to make a determination as to who the final policymaker for the Pittsburg County Jail. The Court recognizes that The issue of final policymaking authority is a legal issue for the Court to determine after review of state and local law. *See Praprotnik,* 485 U.S. at 123. However, Oklahoma statutes do not clearly preclude the Board from possessing final policymaking authority. *See* Okla. Stat. tit. 19 § 513.2(A) (Providing that where a public trust is charged with operation of a county jail "every reference in statute or rule to any duty or responsibility imposed upon the sheriff or any jailer to operate, manage or provide any service to any person in the custody of such facility … shall be deemed applicable to and imposed upon the public trust … ."); Okla. Stat. tit. 57, § 47 (Oklahoma law gives the county sheriff "or such person designated by law in his place" charge of "the county jail of his county and of all persons by law confined therein … ."). Based on the allegations in Plaintiff's Complaint, the Court finds it is plausible for the Board to have retained policymaking authority with regard to at least some policies and procedures at the Pittsburg County Jail.

DATED this 18th day of June, 2013.

/s/ James H. Payne
James H. Payne
United States District Judge
Eastern District of Oklahoma